UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANDREW WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | |
| BATH IRON WORKS CORPORATION, ) | |
| a SUBSIDIARY OF GENERAL ) | |
| DYNAMICS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Andrew Wallace, by and through the undersigned counsel, complains of Defendant Bath Iron Works Corporation, a Subsidiary of General Dynamics Corporation ("BIW" or "the Employer"), as follows:

**INTRODUCTION**

1. This action arises out of the unlawful employment actions taken by Defendant BIW against Plaintiff Wallace in violation of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA") and the Maine Family Medical Leave Act, 26 M.R.S.A. §843 *et seq.* ("MFMLA"). The illegal practices alleged below were committed within the state of Maine.

**JURISDICTION AND VENUE**

2. Jurisdiction properly lies in this Court pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617(a)(2) and pursuant to the doctrine of supplemental jurisdiction over the state-based MFMLA claim.

3. Venue properly lies in this Court pursuant to 28 U.S.C. 1391.

## JURY DEMAND

4. Plaintiff demands trial by jury of all claims, to the extent allowed by law.

## PARTIES

5. Plaintiff Andrew Wallace ("Plaintiff Wallace") resides in Bowdoinham, Maine. He was hired by Defendant BIW on May 12, 2014 to be a Preservation Technician. BIW terminated Plaintiff Wallace from his position on October 11, 2017.

6. In the year preceding his termination, Plaintiff Wallace worked more than 1250 hours. At all times relevant to this complaint, Plaintiff Wallace performed his job in a satisfactory fashion.

7. Defendant BIW is a wholly-owned subsidiary of General Dynamics Corporation. It is primarily located in Bath, Maine. BIW employs more than 500 employees.

## FACTUAL ALLEGATIONS

**A.   Plaintiff Wallace Has A Serious Medical Condition And BIW Certified His Intermittent FMLA Leave.**

8. Plaintiff Wallace was hired by Defendant BIW in May of 2014.

9. For the next three years, his employment with Defendant BIW continued without issue.

10. In June of 2017, however, Plaintiff Wallace began to suffer symptoms of what would later be diagnosed as anxiety and related shortness of breath. Plaintiff Wallace would suffer this anxiety intermittently during the months of July, August, and September of 2017.

11. When he suffered anxiety and related panic attacks, Plaintiff Wallace would become very dizzy and lightheaded, and feel like he was sick. He would become short of breath and his heart would race.

12. Suffering these symptoms made Plaintiff Wallace unable to work. On the days he suffered these symptoms he would call in sick or leave work early.

13. The symptoms of Plaintiff Wallace's anxiety resulted in him missing a number of days of work in June, July, August, and September of 2017.

14. At the time of the absences, Plaintiff Wallace had not been diagnosed with anxiety. He had never dealt with anxiety before and did not understand what was happening.

15. On August 3, 2017, Defendant BIW placed Plaintiff Wallace on a written warning for the absences in June and July of 2017 that resulted from his undiagnosed anxiety.

16. In early August Plaintiff Wallace's anxiety caused him to miss four days of work between August 8, 2017 and August 11, 2017.

17. On August 14, 2017, Defendant BIW issued Plaintiff Wallace a second written warning for his anxiety-related absences between August 8 and August 11.

18. On or about August 29, 2017, Plaintiff Wallace started his shift for Defendant BIW. Shortly after the shift started, he began to suffer serious chest pains. He was dizzy, his heart was racing, and he thought he might pass out. Plaintiff Wallace was rushed from work to the emergency room in an ambulance.

19. Plaintiff Wallace underwent a number of medical tests at the hospital. Upon information and belief, one concern was that he was having a heart attack, which the tests ruled out.

20. Plaintiff Wallace's next shift working for Defendant BIW was scheduled for August 31, 2017. When he arrived at work, he was directed to Defendant BIW's medical department. Defendant BIW's medical department informed him that he could not work until he had a note from his doctor clearing him to return.

21. Plaintiff Wallace did not have a primary care physician at that time. He had not received medical treatment for his undiagnosed anxiety disorder. As a result, finding a doctor and scheduling an appointment to clear his return to work took approximately one week.

22. Because he had not been cleared to return to work, Plaintiff Wallace was absent August 31, September 1, and September 5. These absences were initially deemed unexcused absences by Defendant BIW.

23. On September 5, 2017, Plaintiff Wallace had his first appointment with his medical provider, Andrew Susan, PA. Plaintiff Wallace's medical provider diagnosed him with an anxiety disorder and shortness of breath.

24. That same day, Plaintiff Wallace's medical provider sent Defendant BIW a note requesting that he be excused from work from August 29, 2017, until September 5, 2017, for medical reasons.

25. In his letter to Defendant BIW, the medical provider also inquired about Plaintiff Wallace securing FMLA leave for "missed and possible future missed work." The medical provider requested Defendant BIW to "fax any FMLA paperwork to our office for consideration."

26. On September 7, 2017, Plaintiff Wallace's medical provider completed Defendant BIW's FMLA certification paperwork and faxed it to Defendant BIW.

27. On the FMLA certification paperwork, the medical provider identified Plaintiff Wallace's serious health condition of anxiety and shortness of breath.  The medical provider also noted that Plaintiff Wallace would experience intermittent periods of incapacity due to "episodic flare-up's" (sic) of his serious health condition.

28. Defendant BIW's paperwork requested Plaintiff Wallace's medical provider to estimate the amount of time that Plaintiff Wallace "will be incapacitated during the employee's regular work hours." The medical provider estimated one day per week and three days per month.

29. Defendant BIW approved Plaintiff Wallace's FMLA certification request. As a result, his unexcused absences on August 31, September 1, and September 5 were all were deemed protected leave under the FMLA.

### B. Plaintiff Wallace Uses FMLA On September 28 And 29, 2017.

30. On September 28, 2017, Plaintiff Wallace was suffering from anxiety that made him unable to work. He contacted Defendant BIW in accordance with its policy for giving notice of utilizing FMLA leave to notify it that he would not be working that day.

31. On September 29, 2017, Plaintiff Wallace was still suffering from anxiety that made him unable to work. He contacted Defendant BIW in accordance with its policy for giving notice of utilizing FMLA leave to notify it that he would not be working that day.

32. Defendant BIW approved Plaintiff Wallace's use of FMLA leave for September 28, 2017, but it denied approval of FMLA leave for his absence on September 29, 2017.

33. Defendant BIW denied the approval of Plaintiff Wallace's FMLA leave for his absence on September 29, 2017, despite knowing that he was absent because of the serious health condition for which it had approved his intermittent leave.

34. On September 29, 2017, Defendant BIW sent Plaintiff Winslow a letter explaining that his request for leave was denied because he was only allowed to use FMLA leave one time per month. Defendant BIW mailed this letter to an incorrect address for Plaintiff

Wallace. Defendant BIW had failed to update its records when Plaintiff Wallace notified it that he had moved.

35. The information in Defendant BIW's September 29, 2017 letter to Plaintiff Wallace regarding the amount of leave he was entitled was incorrect. Defendant BIW had not approved Plaintiff Wallace for only one absence per month as the letter stated.

36. Plaintiff Wallace had been approved for intermittent FMLA. His medical provider had estimated that his serious health condition would result in partial or full day incapacity approximately 1 time per week and three times per month. This figure was an estimate.

37. In its letter, Defendant BIW also told Plaintiff Wallace that he had until October 15, 2017, to provide additional certification from his physician if he believed that his certification needed to be updated.

38. Despite the fact that Defendant BIW had told Plaintiff Wallace that he had until October 15, 2017, to provide updated certification for his leave, and despite the fact that Defendant BIW had approved him for more FMLA leave than its September 29 letter stated, on October 3, 2017, Defendant BIW began the process of terminating Plaintiff Wallace's employment for his absence on September 29, 2017.

39. On October 11, 2017, Defendant BIW terminated Plaintiff Wallace for being absent on September 29, 2017. P

## COUNT I
**FMLA (Interference and Retaliation)**

40. Plaintiff Wallace re-alleges and herein incorporates by reference Paragraphs 1- 39 as if set forth in their entirety herein.

41. The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempted exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

42. The FMLA also makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

43. In September of 2017 Defendant BIW had certified Plaintiff Wallace for intermittent FMLA for his serious health condition of anxiety and shortness of breath.

44. Plaintiff Wallace's FMLA certification paperwork requested his medical provider to estimate the frequency with which Plaintiff Wallace's serious medical condition would result in the incapacity to work.

45. On September 29, 2017, Plaintiff Wallace suffered symptoms of his serious medical condition that made him unable to work that day.

46. Plaintiff Wallace followed Defendant BIW's procedures and notified Defendant BIW he would be using federally protected leave that day because of his serious medical condition.

47. Defendant BIW denied Plaintiff Wallace's request for leave under the FMLA and incorrectly stated that he only was entitled to FMLA leave one day per month.

48. Because Defendant BIW denied Plaintiff Wallace's request for FMLA leave on September 29, 2017, his absence was entered as "Personal Business" (Code 06).

49. Because Plaintiff Wallace was not entitled to any Personal Business days on September 29, 2017, Defendant BIW terminated his employment on October 11, 2017.

50. Defendant BIW interfered with Plaintiff Wallace's right to FMLA by denying his use of federally protected FMLA leave for his serious health condition on September 29, 2017.

51. Defendant BIW also interfered with Plaintiff Wallace's right to FMLA by denying him the opportunity to have his medical provider recertify FMLA any paperwork to explain why his inability to attend work on September 29, 2017 was related to his serious medical condition, and to update the certification to provide for necessary additional intermittent absences.

52. Defendant further interfered with Plaintiff Wallace's federal rights by denying him the ability to obtain a recertification and terminating him on October 11, 2017, for being absent on personal business on September 29, 2017 when the reason for the absence was a serious medical need.

53. Defendant BIW's conduct in interfering was willful and done in bad faith because it knew Plaintiff Wallace had a serious medical condition that resulted in incapacity from work, it had approved his application for FMLA leave, it initially communicated to Plaintiff Wallace that he had until October 15, 2017, to provide recertification, but records reflect that it had internally decided to terminate him on October 3, 2017, and actually terminated him on October 11, 2017.

54. By preventing Plaintiff Wallace from utilizing protected leave that was due to incapacity from a serious medical condition, Defendant BIW's conduct denied or otherwise interfered with his substantive rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

55. Defendant BIW terminated Plaintiff Wallace's employment in order to interfere with, restrain or deny him the exercise of, or attempted exercise of, his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1) and (2).

56. Alternatively, Defendant BIW's termination of Plaintiff Wallace was done to discriminate and/or retaliate against him because of his protected use of FMLA leave in violation of 29 U.S.C. § 2615(a)(1) and (2). For the foregoing reasons, this retaliatory conduct was willful and done in bad faith.

57. There are no legitimate reasons for Plaintiff Wallace's termination by Defendant BIW.

## COUNT II
### (For Violation of the Maine Family Medical Leave Act)

58. Plaintiff Wallace re-alleges and hereby incorporates by reference Paragraphs 1- 57 as if set forth in their entirety herein.

59. Plaintiff Wallace suffers from a serious health condition as defined by 26 M.R.S.A. §843(6).

60. Plaintiff Wallace was entitled to take intermittent leave under the MFMLA, 26 M.R.S.A. §844 for his serious health condition.

61. Defendant BIW interfered with Plaintiff Wallace's attempt to exercise his right to medical leave in violation of 26 M.R.S.A. § 847(1). For the previously explained reasons, this interference was willful and done in bad faith.

62. Defendant BIW discriminated against Plaintiff Wallace because he exercised his right to medical leave in violation of 26 M.R.S.A. § 847(2). For the previously explained reasons, this retaliatory conduct was willful and done in bad faith.

63. There are no legitimate reasons for Plaintiff Wallace's termination by Defendant BIW.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

A.  On Count I, order Defendant BIW to remove all references in his personnel file to discipline related to absences that were due to his serious medical condition, and to order Defendant BIW to make Plaintiff whole for lost wages and benefits and to pay liquidated damages in an amount equal to the sum of lost wages and benefits;

B.  On Count II, order Defendant BIW to remove all references in his personnel file to discipline related to absences that were due to his serious medical condition, and order BIW to make Plaintiff whole for lost wages and benefits and to pay liquidated damages in an amount equal to $100 per day that the violation has continued;

C.  On both Counts, order Defendant BIW to pay prejudgment and post-judgment interest, costs, and reasonable attorneys' fees;

D.  Grant such additional relief as this Court deems appropriate.

                                          Respectfully submitted,

Dated: October 8, 2019           /s/ Samuel S. Riotte _____
                                         Samuel S. Riotte
                                         McTEAGUE HIGBEE
                                         Four Union Park
                                         P.O. Box 5000
                                         Topsham, ME 04086
                                         (207) 725-5581
                                         sriotte@mcteaguehigbee.com

                                         *Counsel to Plaintiff*